AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT
2/25/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KM___ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
February 25, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ch___ DEPUTY

for the

Central District of California

UNITED STATES OF AMERICA,

Plaintiff,

v.

PEDRO JOSE SANTOS-GARCIA,

Defendant.

Case No.  2:26-mj-01053-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Nicholas DeSimone, the complainant in this case, state that the following is true to the best of my

knowledge and belief.  On or about the date of February 24, 2026, in the county of Santa Barbara in the Central

District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation |

This criminal complaint is based on these facts:
**_Please see attached affidavit._**
☒ Continued on the attached sheet.

_____
*/s/*
*Complainant's signature*

Nicholas DeSimone, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    2/25/2026

*BMirch*
*Judge's signature*

City and state:    Los Angeles, California        Hon. Brianna Mircheff, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Nicholas Purcell (213-894-3752)

## AFFIDAVIT

I, Nicholas DeSimone, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against and arrest warrant for Pedro Jose SANTOS-Garcia ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF RESIDENT AGENT IN CHARGE NICHOLAS DESIMONE

3.    I am a Homeland Security Investigations ("HSI") Special Agent ("SA") and have been employed as such since February 21, 2016.  I am authorized by Title 8, United States Code, Section 1357, and Title 19, United States Code, Section 1589a, to investigate immigration law and customs law violations, respectively.

4.    On March 5, 2009, I began my law enforcement career with the United States Border Patrol ("USBP") as a Border Patrol

agent.  From 2009 to 2016, I was primarily assigned to the USBP's El Centro Sector in Southern California.  During my tenure with the USBP, I was assigned to various interdiction and intelligence teams, and from my assignment on these teams, I became trained and experienced in surveillance, investigative research, the analysis of telephone records, and basic investigative skills related to the interdiction of contraband smugglers.  Additionally, during this period, I was the Indio Border Patrol Station's prosecutions officer.  In that role, my duties involved conducting reactive investigations of both immigration and customs violations and, if applicable, seeking criminal prosecutions for those violations.  During the course of my employment with the USBP, I was involved in hundreds of prosecutions related to the illegal entry of criminal aliens into the United States and the smuggling of human and drug contraband by transnational criminal organizations.

5.    In 2016, I began my employment with HSI.  I attended and completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the HSI Special Agent Training Program.

6.    Following the completion of my training, from 2016 to 2019, I was assigned to the HSI Los Angeles International Airport ("LAX") Office in El Segundo, California, where I was primarily assigned to investigating contraband smuggling – namely opioid smuggling – via the mail and commercial cargo systems.

7.    From 2019 to 2024, I was a member of Group 46 of the Southern California Drug Task Force, where I was tasked with performing criminal investigations into complex drug trafficking conspiracies and networks.  During this period, I led and participated in dozens of investigations of complex drug trafficking conspiracies.

8.    I am currently the Resident Agent in Charge of the HSI Integrated Operations Group Task Force (the "Task Force").  As part of this Task Force, I investigate various federal crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations.  As a result of my collaboration with these DHS employees on this Task Force, I have conducted investigations for a wide variety of federal offenses and am familiar with DHS databases that are used to identify individuals who are subject to prosecution for federal crimes.

### III.  TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

9.    Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

a.    Every person has a unique set of fingerprints.  I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints.  In many cases,

DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b.    Moreover, when a person is fingerprinted by DHS agencies, such as ICE, those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

10.  Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records,

including immigration records indicating whether that person is amenable to immigration enforcement action.

### IV. STATEMENT OF PROBABLE CAUSE

11.  On or about February 24, 2026, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that, on or about February 23, 2026, he was arrested by the Santa Barbara County Sheriff's Department ("SBCSD"), within the Central District of California, for the offense of Evading a Peace Officer, in violation of California Vehicle Code Section 2800.2(a).

12.  Defendant is currently in custody with SBCSD.  Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for defendant while he is in a custodial setting because once defendant is released from custody, he may abscond or evade apprehension, particularly in light of his prior removals and unlawful reentry.  Effectuating an arrest while defendant is in custody is materially safer for officers and defendant and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.

13.  I compared a unique fingerprint identifier from the arrest referenced above against those contained in the immigration and removal records retained for defendant in DHS indices.  I have determined that these unique fingerprint

identifiers are the same and therefore believe that both sets of records reference defendant, a previously removed alien.

14.  On or about February 25, 2026, I conferred with other law enforcement officers, including DHS personnel, and reviewed records associated to defendant's unique fingerprint identifiers that are contained in DHS indices.  I learned the following about defendant's immigration history:

      a.    Defendant is a citizen and national of Mexico.

      b.    On or about January 17, 2002, defendant was ordered removed from the United States to Mexico.  On or about December 5, 2002, defendant was physically removed from the United States to Mexico.

      c.    On or about April 17, 2023, defendant was ordered removed from the United States to Mexico.  On or about April 17, 2023, defendant was physically removed from the United States to Mexico.

      d.    There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since defendant's most recent removal.  Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

15.  Based on my review of a criminal history report for defendant, which is associated to defendant's unique fingerprint identification number(s), I have learned the following:

a.   On or about July 12, 2001, defendant was convicted in the Superior Court of California, County of Santa Barbara, for the offense of Possession of Controlled Substances for Sale, a felony, in violation of California Health and Safety Code Section 11351, and the offense of Filing a False/Forged Document, a felony, in violation of California Penal Code Section 115, for which defendant was sentenced to three years in prison.

b.   On or about March 5, 2020, defendant was convicted in the Superior Court of California, County of Santa Barbara, for the offense of Willful Cruelty to a Child, a misdemeanor, in violation of California Penal Code Section 273A(b), for which defendant was sentenced to one day in jail and four years' probation.

### V.   CONCLUSION

16.   For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 25th day of
February 2026.

_____
HON. BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE